[Civ. No. 3437. First Appellate District, Division Two.—October 5, 1920.]

In re Accusation of the BAR ASSOCIATION OF SAN FRANCISCO v. RUSSELL W. CANTRELL, an Attorney and Counselor at Law.

[1] ATTORNEY AT LAW—DUTY TO BENEFICIARY OF WILL—TRUST RELATIONSHIP.—The attorney of the personal representatives charged with the duty of administering the estate of a testatrix stands in the same trust relationship to the beneficiary of her will as such representatives.

[2] ID.—DISBARMENT PROCEEDING—ACTS INVOLVING MORAL TURPITUDE —APPLICATION OF CLIENT'S MONEY TO OWN USE—ADMISSIONS.— In this proceeding for the disbarment of an attorney and counselor at law, the admissions of the respondent showed conclusively that he had been guilty of several acts involving moral turpitude in improperly applying to his own use his client's money.

[3] ID.—USE OF CLIENTS' MONEY FOR OWN PURPOSES — SUSPENSION FOR WRONGDOING.—Where an attorney has mingled his clients' money with his own and has used it for his own purposes, even though settlements are thereafter made with his clients, particularly pending investigations concerning his acts, such conduct requires at least suspension of the attorney for a period commensurate with the wrongdoing.

APPLICATION for the disbarment of an attorney and counselor at law. Respondent suspended.

The facts are stated in the opinion of the court.

Perry Evans for Petitioner.

Nathan C. Coghlan for Respondent.

BRITTAIN, J.—The Bar Association of San Francisco accused Russell W. Cantrell, an attorney and counselor at law, of certain acts in his office as attorney which were alleged to have involved moral turpitude and dishonesty within the scope of subdivision 5 of section 287 of the Code of Civil Procedure, which provides that an attorney and counselor

---

3. Wrongful retention of money as ground for disbarment of attorney, note, 17 Ann. Cas. 692.

may be removed or suspended "for the commission of any act involving moral turpitude, dishonesty or corruption, whether the same be committed in the course of his relations as an attorney or counselor at law, or otherwise, and whether the same constitute a felony or misdemeanor or not; and in the event that such act shall constitute a felony or misdemeanor, conviction thereof in a criminal proceeding shall not be a condition precedent to disbarment or suspension from practice therefor."

The accusation was in four counts, to one of which a demurrer was sustained. The other three counts may be summarized as follows: First, that the respondent, who was the attorney for the executor and executrix of the will of Alice Wall, a deceased person, after the admission of the will of the decedent to probate, for the purpose of seeking additional employment and compensation, wrote to one Alice Foley, a beneficiary under the will, then residing in the state of Connecticut, informing her that he was acting as the attorney for the executor and executrix, and further stating, "As I deem it advisable for the quick winding up of the estate to have the parties interested represented by as few attorneys as possible, I write to inquire if you desire me to represent you in this proceeding"; that on receipt of this letter, Alice Foley, through her attorney in Connecticut, wrote the respondent for a copy of the will and for such papers as the respondent might suggest she should sign; that on February 27, 1914, the respondent replied as follows: "Under our law foreign heirs or beneficiaries under a will must have a local agent to represent them. This appointment may be made either voluntarily or through an order of court." It is further alleged that these statements were untrue. Both the statements and their untruth are conceded.

Second, that the statements set forth above were made and that in March or April, 1914, the respondent in fact became the attorney of Alice Foley, and as such attorney and for her, on or about January 24, 1917, he received from the executor and executrix of the will in question the sum of $751.15, in payment of the legacy to her; that the respondent "willfully and fraudulently neglected and failed to pay said sum of money to said Alice Foley," and appropriated it to his own purposes against her will and consent;

that the money so alleged to have been embezzled was not paid to Alice Foley until the month of March, 1918, and not until there had been an investigation of the respondent's conduct by the accuser's committee of discipline and grievances. The facts alleged are conceded.

Third, that the respondent as the attorney for the plaintiff in an action in the superior court of San Francisco, entitled *Stefano Demartini v. Lewis Packing Company*, procured a mandatory injunction requiring the defendant forthwith to remove an encroachment from the property of the plaintiff, which encroachment consisted of a portion of a building, and the judgment awarded the plaintiff in that action $400 damages and costs; that the defendant appealed from the judgment; that thereafter, on or about August 20, 1918, the attorney for the defendant in that action offered to the respondent, as the attorney for Demartini, to satisfy the money part of the judgment and to dismiss the appeal, provided the defendant were granted until March 1, 1919, to remove the encroachment; that Demartini refused to approve this settlement and instructed the respondent not to enter into it, notwithstanding which the respondent entered into a stipulation, the effect of which was to delay the appeal and to stay the mandatory injunction until March 1, 1919, and, coincident therewith, on or about August 24, 1918, the respondent received from the defendant $450 in satisfaction of the money portion of said judgment; that for over six months thereafter the respondent failed to pay the said money to his client, and during said period purposely concealed from his client the fact that the respondent had collected the same, and until his client was informed by the attorney for the defendant in said action that the money had been paid. These facts also are conceded.

On behalf of the respondent in regard to the withholding of the money in the Wall estate from Alice Foley, the following quotation is made from his brief: "The only explanation offered by the respondent in his defense to this charge was that at the time he received this money he was engaged in extensive litigation, his compensation for his legal services being rendered therein being dependent upon the successful outcome of said litigation; that said litigation was pending at the time he received the said money, and continued for a period of fourteen months; that during this

period respondent received no money from his law practice, as his time was exclusively engaged in the said litigation, and he was unable to borrow any money on his contemplated fee in this litigation until on or about the first day of March, 1918, when respondent did borrow the sum of $1,350, and thereupon paid to his client the amount due her in full. The respondent appropriated the money received by him, as aforesaid, to his own use for living expenses, during said period, anticipating an early determination of the said litigation, when he could have arranged for the return of the said money so withheld; that during this period the respondent was practically insolvent; that respondent did not at any time conceal from anyone the receipt by him of the said money belonging to his said client; that in the month of December, 1917, respondent paid to the said client, through a local attorney $100 on account of the amount collected by him.''

In regard to the Demartini .case the respondent seeks to justify his having failed to obey the instructions of his client by an unsupported statement that he was following the wishes of his client's son. The only explanation of his having retained his client's money .for a period of many months is that he thought his client would be angry if he thought the settlement had been made in violation of the instructions he had given the attorney.

Of the misrepresentations made by the respondent to Alice Foley by which he was placed in a position which made possible his misappropration of her money, no justification was attempted. [1] He was the attorney of the personal representatives charged with the duty of administering the estate of Alice Wall. He stood in the same trust relationship to the beneficiary of her will as the executor and executrix. (*Bergin* v. *Haight,* 99 Cal. 52, [33 Pac. 760].) His misrepresentation concerning the law of this state to his trustor residing in another state was one of fact and was fraudulent.

[2] In view of the admissions of the respondent, no conclusion is possible but that he has been guilty of several acts involving moral turpitude. ''As a good moral character is a condition precedent to admission to the bar, so it is a requisite condition for the rightful continuance in the practice of the profession. (*Ex parte Brounsall,* 2 Cowp. 829,

[98 Eng. Reprint, 1385]; *Sanborn* v. *Kimball,* 64 Me. 146; *Strout* v. *Proctor,* 71 Me. 290; *Delano's Case,* 58 N. H. 5, [42 Am. Rep. 555]; *In re Davies,* 93 Pa. St. 120, [39 Am. Rep. 729]; *Ex parte Wall,* 107 U. S. 280, [27 L. Ed. 552, 2 Sup. Ct. Rep. 569, see, also, Rose's U. S. Notes].)" · (*In re O.,* 73 Wis. 602, [42 N. W. 221].) "It is indispensable that an attorney be trustworthy. And he is not trustworthy if he is capable of improperly applying to his own use his client's money, whether he intends to return it or not." (*In re Treadwell,* 67 Cal. 353–358, [7 Pac. 724, 728].) **[3]** Where attorneys have mingled their client's money with their own and have used it for their own purposes, even though, as in this case, settlements were there-·after made with their clients, particularly pending investigations concerning their acts, courts have repeatedly held that such conduct requires at least suspension of the attorney for a period commensurate with the wrongdoing. (*In re Dobbs,* 173 App. Div. 605, [160 N. Y. Supp. 173]; *In re Evans,* 169 App. Div. 502, [155 N. Y. Supp. 491]; *In re O.,* 73 Wis. 602, [42 N. W. 221]; *In re Eisenberg,* 173 App. Div. 598, [160 N. Y. Supp. 143]; *In re Treadwell,* 67 Cal. 353, [7 Pac. 724].)

It is ordered that the respondent be suspended from his office as an attorney and counselor at law in the courts of this state and from practice as an attorney and counselor at law in this state for the period of one year from and after the date when this judgment shall become final.

Nourse, J., and Langdon, P. J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on November 4, 1920, and a petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on December 2, 1920.

All the Justices concurred.